UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-00117-MOC
(1:17-cr-00034-MOC-WCM-2)

| | |
|---|---|
| MARK BRYAN KAPING, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.   BACKGROUND**

In early 2017, Petitioner Mark Bryan Kaping ("Petitioner") was involved in a methamphetamine-trafficking conspiracy. In January 2017, South Carolina law enforcement officers seized a small quantity of crystal methamphetamine ("crystal meth") from Petitioner following a roadside investigation. [CR Doc. 54 at ¶ 6(B): Presentence Investigation Report (PSR)]. During the incident, Petitioner admitted to purchasing and transporting 1 to 2 ounces of crystal meth weekly for the last month or two in the Western District of North Carolina and Greenville, South Carolina, and to paying $6,000.00 the previous night for what he believed was a pound of crystal meth. [Id.].

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 1:19-cv-00117-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 1:17-cr-00034-MOC-WCM-2.

In February 2017, a confidential source ("CS") notified law enforcement that Petitioner was using Randall Frady's residence in Fairview, North Carolina to store Petitioner's crystal meth. [Id. at ¶ 6(A)]. The CS stated that Frady would sell the crystal meth if Petitioner was not present. [Id. at ¶ 6(C)]. With this tip, law enforcement conducted surveillance of Frady's residence over several days. [Id.]. Investigators conducted several stops of vehicles leaving Frady's residence after short visits, finding crystal meth in the vehicles. [Id.]. Two of the drivers admitted to having just purchased the crystal meth from Petitioner, and one admitted to having just purchased the crystal meth from Frady. [Id.].

On February 15, 2017, investigators executed a search warrant on Frady's residence and seized 211.76 grams of crystal meth, a duffle bag filled with $3,060.00 in cash, and miscellaneous drug paraphernalia. [Id. at ¶ 6(D)]. In a bedroom off the living room, the investigators found the duffle bag of cash, 9.7 grams of the crystal meth that was seized, and a receipt bearing Petitioner's name. [Id.]. Down the hallway, investigators found a large Ziploc bag containing pre-packaged one-ounce quantities of crystal meth in a loose heating vent and other containers with additional pre-packaged quantities of crystal meth. [Id.]. Frady was inside the residence and was arrested at the time of the search. [Id.].

Almost a week later, two cooperators contacted the DEA to provide additional information on Petitioner's meth trafficking. [Id. at ¶ 6(E)]. One cooperator admitted to traveling with Petitioner to Greenville, South Carolina on several occasions to pick up crystal meth and bring it to Frady's residence. [Id.]. Petitioner had been selling the cooperator ¼ ounce quantities daily and ½ ounce quantities on the weekends between January and February. [Id.]. According to the cooperator, Petitioner told the cooperator to pick up the crystal meth from Frady at Frady's house. [Id.]. Another cooperator told law enforcement that Petitioner rented the bedroom at Frady's house

where the duffle bag of cash and almost ten grams of crystal meth were found, and that Petitioner would store and sell crystal meth from the residence. [Id.]. Investigators confirmed that Petitioner was at Frady's residence just before the search and the Petitioner instructed another person to remove Petitioner's belongings from the residence after investigators executed the search warrant. [Id. at ¶ 6(G)].

After initially denying any connection to the crystal meth seized form Frady's residence, Petitioner eventually admitted that he visited Frady's residence a few times per week to sell crystal meth. [Id. at ¶ 6(F)]. Both Petitioner and Frady eventually admitted to possessing the crystal meth seized on February 15 and that they possessed that crystal meth with the intent to distribute it. [ID. at ¶ 6(G)].

On March 23, 2017, Petitioner was charged in a Bill of Indictment with one count of drug trafficking conspiracy involving 50 grams or more of actual methamphetamine, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One); and one count of possession with intent to distribute at least 50 grams of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Two). [CR Doc. 1: Bill of Indictment]. The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Count One and the Government agreed to dismiss Count Two. [CR Doc. 28 at 1: Plea Agreement]. The plea agreement provided that the statutory minimum term of imprisonment for Count One was 10 years and the statutory maximum was life imprisonment. [Id.]. The parties also agreed to jointly recommend, pursuant to Rule 11(c)(1)(B) of the Rules of Criminal Procedure, that the Court find and conclude as to the U.S.S.G. that Petitioner's offense involved 211.76 grams of actual methamphetamine, that he was entitled to a two-level decrease for acceptance of responsibility, and that his guilty plea was timely for purposes of U.S.S.G. § 3E1.1(b). [Id. at 2]. The parties also agreed that either party could seek a

departure or variance from the applicable guideline range. [Id.]. The plea agreement was silent as to any enhancements that may or may not apply or any agreements related thereto. [See id.]. Petitioner also agreed as part of the plea agreement that any estimate of a sentence was a prediction, not a promise, that this Court could impose a sentence up to the statutory maximum, and that Petitioner could not withdraw his plea as a result of the sentence imposed. [Id. at ¶ 6].

In the plea agreement, Petitioner stipulated that there was a factual basis for his guilty plea. He also stipulated that he had read and understood the factual basis that was attached to his plea agreement and that the Court and the United States Probation Office may use it, without objection by Petitioner, to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a). [CR Doc. 28 at ¶ 14]. Finally, Petitioner agreed to waive the right to challenge his conviction or sentence on appeal or in any post-conviction proceeding, except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 18-19].

At the plea hearing, Petitioner affirmed that he was, in fact, guilty of the charges to which he was pleading guilty. [CR Doc. 35 at ¶ 24: Acceptance and Entry of Guilty Plea]. Petitioner also testified that he had spoken with his attorney about how the U.S. Sentencing Guidelines might apply to Petitioner's case and that he understood that the district judge would not be able to determine the applicable guideline range until after Petitioner's presentence report was prepared and Petitioner had had an opportunity to comment on it. [Id. at ¶¶ 13-14]. Petitioner also attested that he understood that, if his sentence were more severe than he expected, he would remain bound by his guilty plea and could not withdraw it. [Id. at ¶ 17]. The terms of the plea agreement were reviewed, and Petitioner testified that he understood and agreed to those terms. [Id. at ¶¶ 25-26]. Petitioner also affirmed having read, understood, and agreed with the Factual Basis that was filed with his plea agreement. [Id. at ¶ 31]. Next, Petitioner testified that no one had made any promise

4

of leniency or a light sentence to induce him to plead guilty. [Id. at ¶ 33]. Finally, Petitioner testified that he was satisfied with the services of his attorney and declined the opportunity to say anything more regarding those services. [Id. at ¶¶ 35-36]. The Magistrate Judge accepted Petitioner's guilty plea, finding that is was knowingly and voluntarily made. [Id. at 6].

Petitioner was sentenced on April 2, 2018. Before the sentencing hearing, a probation officer prepared a PSR, recommending that Petitioner's base offense level was 32 based on the drug amount, and that he should receive a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for distributing a controlled substance. [CR Doc. 54 at ¶¶ 12, 13]. With a three-level reduction for acceptance of responsibility, the recommended Total Offense Level (TOL) was 31. [Id. at ¶¶ 19-21]. Petitioner's Criminal History Category was V, yielding a guidelines range of 168 to 210 months' imprisonment. [Id. at ¶¶ 35, 76].

Petitioner's counsel objected to the PSR, arguing that Petitioner did not use or maintain the bedroom in Frady's residence for the primary or principal purpose of storing and selling crystal meth and, therefore, should not receive the two-level premises enhancement. [Id. at 26]. Counsel argued that the house belonged to Frady, who kept the bedroom locked, and Petitioner did not have a key, pay rent, control access to or use of the bedroom, or have a possessory interest in the bedroom or in any part of the house. [Id.]. Counsel asserted that Petitioner's use of the bedroom was sporadic and incidental to his illegal drug activity, that less than 10 grams of the drugs were found in the bedroom, and that Frady was the principal drug distributor from the house. [Id.].

At sentencing, the Court overruled Petitioner's objections and adopted the PSR without change. [CR Doc. 74 at 1: Statement of Reasons]. The Court departed below the advisory guideline range based on Petitioner's substantial assistance and sentenced Petitioner to a term of imprisonment of 130 months. [Id. at 2; CR Doc. 73 at 2: Judgment]. Judgement on Petitioner's

5

conviction was entered on April 27, 2018. [CR Doc. 73]. Petitioner did not appeal his conviction or sentence.

Petitioner timely filed the present motion to vacate on April 3, 2019. [CV Doc. 1]. Petitioner claims he received ineffective assistance of counsel for three reasons: (1) his lawyer "advised [him] that he would object to the enhancement of maintaining a dwelling due to lack of evidence;" (2) "[p]rior to sentencing (the day of sentencing) he falsely told [Petitioner] that he talked to the D.A. about objecting to the enhancement and he was told if [Petitioner] objected to the enhancement [he] would be charged with other enhancements;" and (3) Petitioner "was also told by [his] attorney at the signing of [his] plea agreement that if [he] took the plea [he] would not receive any enhancements at all." [Id. at 4]. On the Court's Order, the Government timely responded to Petitioner's motion. [CV Docs. 2, 3].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient

6

performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The petitioner's "subjective preferences" are not dispositive, but rather the test is "whether proceeding to trial would have been objectively reasonable in light of all of the facts," United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012), and whether the petitioner has shown that there is "contemporaneous evidence" supporting his expressed preferences, Lee v. United States, 137 S. Ct. 1958, 1967 (2017).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S.

at 694). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

The Court addresses Petitioner's claims in turn.

### A. Pre-Plea Claims

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Here, Petitioner challenges only the enhancement to his sentence, not the voluntariness of his guilty plea. As such, Petitioner has waived any pre-plea claims of ineffective assistance of counsel by pleading guilty. See Fields, 956 F.2d at 1294-96.

### B. Sentencing Enhancement

In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea

8

colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."  Id. at 221-22.

Petitioner claims that his attorney told him that his sentence would not be enhanced if Petitioner pleaded guilty.  This claim is without merit.  At the plea hearing, Petitioner testified that no promises were made to him outside the written terms of the plea agreement (which did not address enhancements), that he understood that the sentencing guidelines could not be calculated until the PSR was prepared, and that he understood that he could be sentenced up to the statutory maximum for the offense.  As such, because this claim is contradicted by Petitioner's sworn testimony, it will be dismissed.  See Lemaster, 403 F.3d at 221-22.

Furthermore, Petitioner cannot show prejudice because it would not have been objectively reasonable for him to proceed to trial given the weight of the evidence against him and the fact that he would have received a longer sentence had he gone trial without the three-level reduction for acceptance of responsibility or a three-level downward departure.  See Fugit, 703 F.3d at 260.  Rather, Petitioner would have faced a guidelines range of 235 to 293 months of imprisonment.  As such, Petitioner's claim of ineffective assistance of counsel on this ground is denied.

### C. Representation at Sentencing

Again, to establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence.  See Royal, 188 F.3d at 249.  Guideline 2D1.1(b)(12) applies a two-level increase "[i]f a defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance," which includes storing a controlled substance for distribution.

9

U.S.S.G. §2D1.1(b)(12); U.S.S.G. §2D1.1, cmt. n.17. "The commentary to this enhancement clarifies that '[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises.'" United States v. Messer, 655 F. App'x 956, 958 (4th Cir. 2016) (quoting U.S.S.G. §2D1.1, cmt. n.17). "Premises" includes a building, room, or enclosure. U.S.S.G. §2D1.1, cmt. n.17. When determining whether a defendant "maintained" certain premises, a court considers "whether the defendant held a possessory interest in (e.g., owned or *rented*) the premises." Id. (emphasis added). A court should also consider how frequently the defendant used the premises for distributing drugs versus for lawful purposes. Id.

Petitioner argues that his counsel failed to object to the premises enhancement and told Petitioner that if he objected Petitioner would be subject to other enhancements. Petitioner's claim that his counsel provided ineffective assistance at sentencing is unsupported and without merit. Petitioner's counsel did, in fact, object to the premises enhancement and argued that, without the enhancement, Petitioner would be subject to a guidelines range of 140 to 170 months. The Court overruled this objection. The Court's decision to overrule the objection does not render counsel's assistance deficient.

Moreover, Petitioner has not shown that, but for his counsel's allegedly deficient performance, there is a reasonable probability that the Court would have imposed a lower sentence. See Royal, 188 F.3d at 249. The Court overruled Petitioner's objection based on ample evidence that Petitioner used the room and Frady's residence to distribute drugs. As such, Petitioner's claim of ineffective assistance on this ground will be denied.

In sum, Petitioner's claims of ineffective assistance of counsel will be denied and dismissed for Petitioner's failure to show that his counsel's performance was deficient or that Petitioner was

10

Case 1:19-cv-00117-MOC   Document 5   Filed 09/11/20   Page 10 of 11

prejudiced by counsel's conduct at sentencing or otherwise.  See Strickland, 466 U.S. at 687-88; Royal, 188 F.3d at 249.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: September 11, 2020

Max O. Cogburn Jr.
United States District Judge

11

Case 1:19-cv-00117-MOC   Document 5   Filed 09/11/20   Page 11 of 11